UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff,<br><br>v.<br><br>**ALEXIS CANDELARIA MONSERRATE**, Defendant. | CRIMINAL NO. 14-579 (CCC/CVR) |

**RESPONSE IN OPPOSITION TO MOTION TO SUPPRESS**

TO THE HONORABLE COURT:

COMES NOW, the United States of America, by and through the undersigned attorneys and very respectfully states and prays that Defendant's motion to suppress be **DENIED**.

**FACTUAL AND PRECEDURAL BACKGROUND**

1. The following facts are derived from the affidavit sworn by Puerto Rico Police Department ("PRPD") Agent Carlos Valle Padilla in support of a search warrant authorizing the search of a yellow and green house located in road 619 KM 1.5 at the Cuchillas Ward, el Bombo sector in Morovis, P.R. (hereinafter "the residence").

2. Pursuant to the affidavit in support of the search and seizure warrant, on September 2, 2014 Puerto Rico Police department (PRPD) agent Carlos Valle Padilla from the Criminal Investigation Division in Vega Baja, Puerto Rico received information of criminal activity from an anonymous individual that arrived at the police division. This individual informed

1

agent Valle about a male individual, light skinned, dark hair, medium height, who owns a black, Honda Accord, who has established a drug trafficking point at his residence and that even though the anonymous individual had informed the agents from the Arecibo Narcotics Division about this, that no action has been taken. The anonymous individual stated he feared for his and his family's safety since he had observed the abovementioned, light skinned, male individual carrying a firearm. The anonymous individual further informed agent Valle that this dark hair, light skinned, male individual resided in street 619, kilometer 1.5 in the Cuchilla Ward in Morovis, Puerto Rico. Agent Del Valle then asked the anonymous individual if he would be willing to accompany him (agent Valle) to the residence in order to identify exactly which residence he referred to. The anonymous individual agreed to identify the residence to PRPD agent Valle if his identity was kept anonymous. Agent Valle agreed and they both proceeded to the residence in question.

3. After the anonymous individual identified the residence to Agent Valle, they returned to the PRPD headquarters and the anonymous individual left. Agent Valle is then instructed by his supervisor, Sargent Tirado, to begin an investigation in regards to the information received by the anonymous individual.

4. On September 3, 2014, Agent Valle began surveillance on the residence previously identified by the anonymous individual. Agent Valle did not make any observation relevant to this case on that day.

5. On September 4, 2014, Agent Valle arrived at the residence under surveillance at around

6:35am and parked his confidential vehicle on an undisclosed strategic location1 in order to avoid detection. As Agent Valle began his surveillance he observed a black Honda, Accord vehicle, license plate number HYT-803 parked in front of the residence. Agent Valle then found a location where he had good visibility of the residence and continued his surveillance.

6. At 7:20 a.m. Agent Valle observed a wine color vehicle arrive at the residence. This vehicle stopped in front of the residence under surveillance and from the passenger's side a tall individual dismounted the vehicle. This tall individual had his head shaved, was wearing a polo style shirt with red and white stripes, and had the appearance of a drug addict. This tall individual walked towards the rear area of the residence under surveillance and he approached the cement stairs that lead to the second floor of the residence. A few minutes later, a white skin individual, medium height, and dark hair, wearing black shorts, and a sleeveless white t shirt, came out of the residence. This individual that came out of the residence had the same description as the description previously provided to Agent Valle by the abovementioned anonymous individual who provided the confidential information that gave way to the surveillance.

7. The individual that came out of the residence approached the individual wearing the red and white stripped polo style shirt. Both individuals had a conversation for several minutes, the individual wearing the polo style shirt then took money from his right pant pocket and

---

1 The description of the confidential vehicle as well as the investigative techniques used by PRPD agent Valle cannot be disclosed due to the security of the agent. Agent Valle was located at a strategic location where he had plenty of visibility towards the residence.

handed them to the individual that came out of the residence. The individual that came out of the residence received and counted the money, placed the money inside his front, left pant pocket, retrieved from his front, right pocket a clear plastic zip lock bag that contained multiple smaller baggies of what Agent Valle recognized, based on his experience, as crack cocaine and handed various of those smaller baggies with crack to the individual wearing the polo style shirt. The individual that arrived at the residence under surveillance wearing the polo style shirt took the smaller baggies, left the area, and the individual that came out of the residence reentered the same.

8. A short while later, a short, blond haired individual, wearing a red shirt and blue pants arrived at the residence under surveillance. This individual approached the stairs located on the back area of the residence and entered the residence. After a few minutes, the blond, red shirt individual came out of the residence accompanied by the same dark haired, white skin individual that had come out of the residence earlier. Both individuals spoke for a while and suddenly the dark hair individual that came out of the residence approached the parked Honda Accord that Agent Valle had seen in the residence when he began his surveillance. The dark hair individual that came out of the residence opened the driver's side door of the vehicle and began searching for something under the seat, inside the Honda Accord vehicle. Agent Valle then observed when this dark hair individual took a black firearm out of the Honda Accord vehicle. The dark hair individual that came out of the residence then lifted his t shirt, placed the firearm on his waist area, concealed the same with his t shirt, boarded the Honda Accord vehicle, and drove off carrying the firearm. The blonde

4

individual stayed at the stair area of the residence for a while and later entered the residence.

9. At around 9:25 a.m. a shirtless, tanned "trigueno" skin individual, wearing black shorts, with a large tattoo on his back, carrying a black garbage bag that appeared to have aluminum cans inside arrived at the surveyed residence. The shirtless individual stood in front of the residence's stairs and a few minutes later the short, blond individual Agent Valle previously observed, came out of the residence and spoke with the shirtless individual for several minutes. The shirtless individual then took out some money from his pocket and handed it to the blond individual that had come out of the residence who took the money, counted it, placed it in his pocket and retrieved from another pocket a clear zip lock bag containing multiple smaller baggies of what Agent Valle recognized as crack cocaine. The blond individual then handed several of the smaller crack baggies to the shirtless individual who took the baggies and left the residence. The blond individual then reentered the residence with the remaining clear baggies containing crack cocaine. Agent Valle then concluded his surveillance on that day and left the area.

10. On September 11, 2014, even though Agent Valle was convinced that the residence surveyed and the Honda Accord vehicle was being used to store controlled substances and firearms, he conducted a final surveillance on the residence in question. Agent Valle arrived at the residence at approximately 7:35 a.m. and positioned himself at a location where he had good visibility of the residence under investigation. At that time the Honda Accord vehicle was not parked at the residence. Agent Valle observed the same short,

5

blond hair individual he had seen in the previous surveillances seating at the residence's stairs, wearing black shorts, and a blue shirt.

11. At around 8:15 a.m. a dark skin, tall, skinny individual wearing a white t shirt with a design in the front arrived at the residence and approached the short, blond individual. Both individuals spoke for a few minutes when the dark skin individual that had arrived took money out of his pant pocket, handed the money to the short, blond individual who received the money, counted it, placed the money inside his pant pocket, and from another pocket took out a clear zip lock bag that had many smaller plastic baggies inside containing what Agent Valle recognized as crack cocaine. The short, blond individual then handed the dark skin individual that arrived several of those smaller baggies. The dark skin individual took the smaller baggies and left the residence. A while later the short, blond individual entered the residence. Agent Valle then concluded his surveillance and left the area of residence under investigation.

12. Agent Valle met with his supervisor, Sergeant Tirado, and informed him of his investigation results. Sergeant Tirado instructed agent Valle to consult the case with a prosecutor and apply for a search and seizure warrant for the residence under investigation and the Honda Accord vehicle observed there.

13. Pursuant to the facts contained in the affidavit above, on September 15, 2014, Agent Carlos Valle Padilla requested a search warrant and the same was issued by a Bayamon municipal judge.

14. On September 18, 2014, at approximately 5:20AM, agents from the Police of Puerto Rico

(POPR) executed a state Search Warrant in the yellow house residence located on road 619 KM 1.5 at the Cuchillas Ward, el Bombo sector in Morovis, PR. The aforementioned warrant is a valid warrant signed by Honorable Judge Maria Luz Rodriguez-Cruz.

15. Once the agents arrived at the aforementioned residence, they knocked and announced their presence to the occupants of the house to no avail and entered the residence. The agents found Alexis Candelaria Monserrate and his common law wife, Belkis I. Dávila-Román, in the bedroom and took them out of the bedroom to the living room. Candelaria Monserrate spontaneously stated that there was a revolver inside the bedroom and that it belonged to him. Inside the bedroom closet, on a shelf, the agents found a firearm, a revolver; Smith and Wesson model 36; .38 caliber; serial number J291051 loaded with 5 rounds of .38 caliber ammunition. Candelaria Monserrate was placed under arrest and had his Constitutional Rights read to him.

16. On September 18, 2014, Candelaria Monserrate was once again advised of his Constitutional Rights which he waived and stated that the aforementioned firearm the agents had seized at his residence was indeed his and that he had purchased it illegally for $300.

17. On April 4, 2016, Defendant filed a motion requesting a <u>Franks</u> hearing based on evidence that appears to have been illegally obtained. Namely, the Defendant based his allegations on historical cell site data of the phone registered to the name of PRPD Agent Carlos Valle Padilla. First, because the defense attorney cannot obtain an order under 18 U.S.C. § 2703(d) to obtain historical cell site data and the record reflects that the defense did not

follow Fed. R. Crim. P. 17(c) , the defense should be barred from using such evidence in support of their motion. Alternatively, if the Court were to allow defense counsel to proceed using illegally obtained information, the United States submits that cell site data (which is not the same as GPS) is not 100% accurate data and no one from Claro can certify with 100% certainty the location of a cellphone based on a historical cell site analysis. In addition, the defense has failed to make a sufficient showing that Defendant has standing to seek suppression of the evidence seized at the residence.

## DISCUSSION

### Franks Hearing: Defense has the Burden

18. It is well settled law that there is a presumption of validity with respect to the affidavit supporting a search warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978). Under Franks, a defendant may request an evidentiary hearing to challenge the truthfulness of statements made by law enforcement agents in a search warrant affidavit (a "Franks hearing"). Id. at 155. To obtain a Franks hearing, a defendant must make "a substantial preliminary showing" that: 1) the warrant affidavit contains a false statement made "knowingly and intentionally, or with reckless disregard for the truth," and 2) that "the allegedly false statement was necessary to the finding of probable cause." Id. at 155-56. Defendant's allegations of deliberate falsehood or of reckless disregard for the truth must be accompanied by an offer of proof. Id. at 171. Adequate offers of proof include affidavits or sworn or otherwise reliable statements of witnesses. Id. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be

accompanied by a statement of supporting reasons. Id. "Determining that a defendant has Fourth Amendment standing is a prerequisite to granting a motion for a Franks hearing." United States v. Mastromatteo, 538 F.3d 535, 544 (6th Cir. 2008).

**Obtaining Cell Site Information**

19. The defense admits in its motion to suppress that it obtained information that PRPD Agent Carlos Valle Padilla is the registered owner of telephone number (787) 549-3499 and cell site data regarding that phone number for the dates of September 1, 2014 at 6:00 A.M. to September 12, 2014 at 5:00 P.M. Title II of the Electronic Communications Privacy Act, the Stored Communications Act ("SCA"), governs requests for access to stored records, including historical cell site data. Under the SCA, an order to access such records can be obtained "only if the **government entity** offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis ours). In particular, pursuant to the SCA, Congress (1) placed a neutral and detached magistrate between law-enforcement officers and the records sought; (2) made such records available only if that judicial officer finds specific and articulable facts showing that there are reasonable grounds to believe the records sought are relevant and material to an ongoing criminal investigation; and (3) barred improper disclosures of records so obtained. See §§ 2703(d) and 2707(g).

20. Section 2703(d) permits disclosure of historical cell site data by a provider to a

"**government entity**" upon court order. United States v. Amawi, 552 F. Supp. 2d 679, 680 (N.D. Ohio 2008). The defense attorney is not a "government entity" within the meaning of Section 2703(d). Id. Pursuant to 18 U.S.C. § 2711(4), a "government entity" is defined as "a department or agency of the United States or any State or political subdivision thereof." Id. The judiciary and its components, or the defense attorney, is not a department or agency of the United States; thus, the judiciary, cannot obtain a court order under § 2703(d). Id. Additionally, Section 2702 and 2703 reflect that the legislative purpose was to enable executive departments, such as the Department of Justice, and agencies, to obtain historical cell site data for a particular phone without concurrent notice to the subscriber. See 18 U.S.C. §§ 2703(c)(3) and 2705. Id. As such, the defense had no authority under Section 2703 to obtain the cell site data which it has used in support of its motion to suppress.

21. Also, the defense may not use trial subpoenas to compel the private production of documents. United States v. LaFuente, 991 F.2d 1406, 1411 (8th Cir. 1993); see also United States v. Keen, 509 F.2d 1273, 1274 (6th Cir. 1975); United States v. Hedge, 462 F.2d 220, 222 (5th Cir. 1972). The use of Rule 17(c) for the inspection of documents at the pretrial phase or before they are offered in evidence is only valid if strict adherence to Rule 17(c) is made. See United States v. Nixon, 418 U.S. 683, 699-700 (1974). The rule is not intended to provide a means for discovery in criminal cases. United States v. Santiago-Lugo, 904 F. Supp. 43, 46 (D.P.R. 1995). "The rule was meant to expedite the trial process by providing a mechanism for a **court-supervised inspection** of subpoenaed materials before trial or before submission in evidence, as long as the parties show the

following: (a) that the documents are evidentiary and relevant; (b) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (c) that the party cannot properly prepare for trial without such production and inspection and the failure to obtain such inspection may tend unreasonably to delay the trial, and (d) that the application is made in good faith and is not intended as a general fishing expedition." Id. (emphasis ours). The record does not reflect that a Court inspection of the documents occurred. Accordingly, the record reflects that Rule 17(c) was not followed.

22. Allowing the defense to proceed with evidence that was obtained in contravention to federal law would be rewarding them for engaging in such conduct. The defense was not allowed to obtain the cell site data pursuant to an order under Section 2703(d). In addition, the record does not reflect that the cell site data was produced pursuant to a Rule 17(c) subpoena and the documents were provided to the Court for an inspection.

23. The record does reflect that defense improperly used a *Subpoena to Testify at a Deposition in a Criminal Case* in order to obtain the PRPD Agent's cell site records. D.E. 65-2 and 65-6. The Court should therefore bar the defense from using cell site data in the case at bar.

**Reliability of Cell Site Information**

24. If the Court decides to allow the defense to proceed using the cell site data, the United States submits that such evidence does not amount to a substantial preliminary showing that the affidavit has a false statement. Claro cannot certify to a 100% accuracy that the cell site data evidences that the phone in question was not at the residence under surveillance in Morovis at the time the affidavit was done. Cell site data **is not** GPS. There are a number of

factors that could have caused the telephone registered to PRPD Agent Carlos Valle Padilla to connect to a particular tower even though another tower was closer. A building, mountains, the level of the ground, the angle of the tower's antenna, or another object could have obstructed the phone's access to the closest tower or the call could have been rerouted due to network traffic or malfunction. See, e.g., United States v. Evans, 892 F. Supp. 2d 949, 956 (N.D. Ill. 2012).

**Confidential Vehicle**

25. The defendant also alleges that because PRPD Agent Carlos Valle Padilla did not complete the paperwork regarding the usage of the confidential vehicle, he therefore did not conduct the surveillance.

26. PRPD agent did use a confidential vehicle during his surveillances as authorized by his direct supervisor Sargent Tirado. Agent Padilla did not complete the mileage documentation in regards to the usage of the confidential vehicle due to an involuntary oversight resulting from the confidentiality of his assignment.

**Standing**

27. The Fourth Amendment's prohibition against unreasonable searches and seizures extends to those places and interests in which the defendant has a reasonable expectation of privacy. United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir. 1994) (internal citation omitted). An expectation of privacy is a threshold standing requirement that a defendant must establish before a Court can proceed with any Fourth Amendment analysis. Id. "The factors pertinent to this threshold inquiry include: ownership, possession, and/or control;

historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case." United States v. Aguirre, 839 F.2d 854, 856 57 (1st Cir. 1988). **The defendant bears the burden of persuasion on this issue.** Lewis, 40 F.3d at 1333 (internal citations omitted) (emphasis ours). Accordingly, in support of a motion to suppress, a defendant must personally swear out an affidavit in which he asserts that he has a legitimate expectation of privacy over the property searched and seized. See id.

28. A defendant does not have an absolute right to an evidentiary hearing on every motion. United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990) (citations omitted). Evidentiary hearings on motions to suppress are required only when a defendant makes a sufficient showing that he has standing and that a warrantless search has occurred. Lewis, 40 F.3d at 1333. Defendant has failed to meet this burden.

29. The motion and supporting documentation presented by Defendant fail to establish that he has standing to suppress. Since Defendant has also failed to demonstrate that he has standing, his motion to suppress should be denied without an evidentiary hearing.

WHEREFORE, the United States respectfully requests that the Court **DENY** Defendant's motion to suppress without a hearing because Defendant has failed to show that the warrant affidavit contains a false statement and that he has standing to suppress.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 10th day of May, 2016.

**ROSA EMILIA RODRIGUEZ VELEZ**
United States Attorney

S/Daynelle Alvarez Lora
Daynelle Alvarez Lora 227612
Assistant U.S. Attorney
Torre Chardon, Suite 1201
350 Carlos Chardon St.
San Juan, P.R.   00918
Tel. (787) 766-5656; Fax (787) 772-3992
e-mail: daynelle.m.alvarez@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

S/Daynelle Alvarez Lora